UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRELL PRICE,

    Plaintiff,

v.

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTIONS, *et al.*,

    Defendants.

Case No. 1:19-cv-740
JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

This cause comes before the Court on the Magistrate Judge's December 28, 2020, Report and Recommendation ("December 28 R&R," Doc. 28), Plaintiff Terrell Price's Objections to the R&R (Docs. 29 & 36), and Defendants Bruce Snively, Monica Ford, Eric Dupuis, and Steve Cooper's (collectively the "Defendants") Response to Plaintiff's Objections to the R&R. (Doc. 31). That R&R recommends that the Court grant Defendants' Motion for Summary Judgment ("MSJ," Doc. 17). For the reasons below, the Court **OVERRULES** Price's Objections (Docs. 29 & 36) and **ADOPTS** the December 28 R&R (Doc. 28) in total. The Court thus **GRANTS** the Defendants' Motion for Summary Judgment (Doc. 17) and **DISMISSES** Price's Eighth Amendment claim, the sole remaining claim here, **WITH PREJUDICE**.

## BACKGROUND

**A.  Factual Background**

As the December 28 R&R notes, the relevant facts "are largely undisputed." (Doc. 28, #454). To start, Terrell Price is currently an inmate at the Richland Correctional Institution.[1] The events at hand, however, happened during Price's incarceration at the Lebanon Correctional Institution. Price ended up in Lebanon on a fourteen-year sentence after a 2014 conviction for drug trafficking and related offenses. (Protective Control Packet, Doc. 17-5, #183). In June 2018, the prison reassigned him to a new cell co-occupied by Joshua Morrissette. (Compl., Doc. 3, #45). That reassignment proved to be a problem. On June 8, non-party corrections officers Bratcher and Flowers randomly searched Price and Morrissette's cell. (Conduct Report 1, Doc. 17-1, #130). That search revealed marijuana and suboxone strips under Price's mattress. (*Id.*). Price stated that the drugs belonged to him. (*Id.*).

Given that statement, the officers issued a Conduct Report charging Price with violating prison rules. (*See id.*). Price, for his part, asserts that he later informed Bratcher that Morrissette "forced" him to claim the contraband. (Doc. 3, #46). Yet Bratcher's report does not reflect this. (*See* Conduct Report 1, Doc. 17-1). Nor does Price allege that he told any of the Defendants of his explanation.

---

[1] Previous filings (and R&Rs) in this case noted Price's then-current incarceration at the Warren Correctional Institution. However, the Court's review of his incarceration at the time of this Opinion's filing suggests that Price is currently incarcerated at the Richland Correctional Institution. *See Offender Search Detail – Terrell A. Price*, OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A652493 (last visited November 16, 2022).

On June 12, Officer Eric Dupuis met with Price and gave him the Conduct Report. (Dupuis Aff., Doc. 17-12, #315). Dupuis also informed Price of his right to make a statement about the charges. (*Id.*). Price pled not guilty to the allegations in the Conduct Report, stating for the first time that he "took out for it" and that Morrissette is "affiliated," presumably with a gang. (*Id.*). In other words, Price changed his tune. Now he says he only took responsibility for the drugs out of fear of Morrissette.

Before Price began sharing a cell with Morrissette, the prison had approved Price's request to transfer to a different institution to be closer to his family. (Snively Aff., Doc. 17-13, #319). But Bruce Snively, the Unit Manager then, put a hold on that transfer pending the incident's resolution. (*Id.*).

Dupuis referred Price's case to the Rules Infraction Board ("RIB"), an internal committee in charge of resolving conduct disputes and meting out punishments for violating prison policy. (Doc. 17-12, #315). The RIB considered the Conduct Report, Price's statement, and the evidence and found Price guilty of the possession offense. (Doc. 17-1, #134–36). On the RIB's reporting form is a box asking whether the RIB believed the inmate's version of the story. (*Id.* at #136). For unknown reasons, the RIB selected "yes." (*Id.*). But it noted that it "believes the [Conduct Report] to be factual and substantiates" the charges. (*Id.*). The RIB removed Price to limited privilege housing until June 22. (*Id.*). He appealed to the Warden, who affirmed the RIB determination. (*Id.* at #140).

3

While in limited privilege housing, Price says that he told Officer Steve Cooper that he did not want to continue sharing a cell with Morrissette. (Doc. 3, #46). Cooper, for his part, stated in an affidavit that "[a]t no point whatsoever did Price ever voice to me any problems, issues, or concerns" about Morrissette. (Cooper Aff., Doc. 17-15, #327). Had Price done so, Cooper says, he would not have been returned to the cell with Morrissette. (*Id.*).

Whether or not he made a complaint to Cooper, it is undisputed that Price returned to bunk with Morrissette on June 22. (Doc. 3, #46). He alleges that Morrissette attacked him shortly after his return, leaving him with two black eyes and lacerations all over his body. (*Id.* at #47). Price says that he "was left on the floor to die" in his cell. (*Id.*). The Conduct Report from the incident, on the other hand, merely reflects that he reported "a fight" with Morrissette to an on-duty officer. (Conduct Report 2, Doc. 17-2, #151).

After Price reported the "fight," an officer escorted him to the medical center. (*Id.*). Medical staff that examined Price noted his desire for transfer to a new cell but did not note any reference to a "stabbing" or "assault." (*See generally* Doc. 17-9). On the contrary, the medical report describes Price as having abrasions and contusions. (*Id.* at #270). And throughout the subsequent disciplinary processes, Price referred to the confrontation as a "fight." (*See, e.g.*, *id.* at #273; *see also* Doc. 17-2, #151).

Perhaps based on Price's description of the events, officers charged him with fighting. (Doc. 17-2, #151). Price pled not guilty and alleged for the first time that he was "assaulted" and "stabbed" and that Morrissette was "extorting" him. (*Id.* at #158).

Consistent with the medical staff's findings, officers never recovered any weapon Morrissette might have used to "stab" Price. Instead, they found both inmates' injuries "consistent with fighting marks and scratches." (Ford Aff., Doc. 18, #354).

Officers completed a new Conduct Report, which the RIB once again adjudicated. (Doc. 17-2). Based on this Conduct Report, Price's testimony, and the relevant medical records, the RIB found Price guilty of fighting. (*Id.* at #161). And this time, the RIB checked the box indicating they did not believe Price's defense. (*Id.*). The Warden again denied Price's appeal. (*Id.* at #168).

After another stint in limited privilege housing, Price refused to return to J-Block to be with Morrissette. (Doc. 3, #48). Instead, the prison assigned Price to C-Block. (Doc. 17-15, #327). Prison investigators denied multiple requests for protective housing, believing that Price's complaints centered on "the hopes of reinstating his prison transfer." (Schweitzer Aff., Doc. 17-11, #312). The committee in charge of reviewing Price's requests also noted that "in an effort to reinstate his transfer, Price attempted to have Morrissette claim ownership of the drugs, and when Morrissette refused, a fight broke out between the inmates." (Doc. 17-12, #317).

Eventually, Price received a transfer. But from June 28, 2018, until his transfer to Warren Correctional Institution, he filed more than forty grievances relating to these events. (*See* Grievance History, Doc. 17-7).

**B.   Procedural Background**

On August 1, 2019, Price moved pro se in this Court's Eastern Division seeking leave to proceed in forma pauperis with his proposed Complaint against the Ohio

5

Department of Rehabilitation and Corrections ("ODRC") and certain of its officers. (Doc. 1). On August 9, Magistrate Judge Deavers granted Price's request and ordered Price's Complaint filed. (Doc. 2). His Complaint was docketed that same day. (Doc. 3).

A week later, on August 16, Magistrate Judge Deavers issued a Report & Recommendation (Doc. 4). That R&R recommended two things. First, it recommended that the Court dismiss Price's claims against ODRC for failure to state a claim upon which relief can be granted. (*Id.* at #51). And second, it recommended that Price's remaining claims be transferred to the Western Division and thus this Court. (*Id.*). Judge Graham adopted that R&R on September 6 and ordered the case transferred. (Doc. 5). This Court then received the case and referred it to Magistrate Judge Bowman (from now on, the "Magistrate Judge").

On September 23, the Magistrate Judge issued another Report & Recommendation (Doc. 7). That R&R recommended that the Court dismiss Price's remaining claims, with one exception. It recommended that Price's Eighth Amendment failure-to-protect claims against Defendants Snively, Ford, Dupuis, and Cooper in their individual capacities should survive. (*Id.* at #67). Price did not object, so the Court adopted that R&R also. (Doc. 11).

Several months later, on August 28, 2020, Defendants moved for summary judgment on the remaining issue, attaching several exhibits to support their argument. (Doc. 17). After some confusion, delay, and a show-cause order (Doc. 19), Price responded on October 15. (Doc. 23). The Defendants replied on October 30 (Doc. 25).

Finally, the Magistrate Judge issued the December 28 R&R recommending that the Court grant the Defendants' Motion for Summary Judgment and dismiss the case. (Doc. 28). More specifically, the R&R concludes that Price has not shown either the objective or subjective components of an Eighth Amendment claim, either as to the facts that occurred before his altercation with Morrissette, or those that occurred after it. (*Id.* at #461). The R&R further noted that any objections must be submitted within fourteen days. (*Id.* at #469). Price objected on January 15, 2021. (Doc. 29). The Defendants responded on January 28. (Doc. 31). And Price objected again on September 12, 2022. (Doc. 36).

## LAW AND ANALYSIS

The Court reviews an R&R de novo after a party timely objects. Fed. R. Civ. P. 72(b)(3). Such a review applies only to "any portion to which a proper objection was made." *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013).

Faced with a proper objection, "[t]he district court 'may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(3)). But a purely general objection "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Thus, a party must identify each issue in the R&R to which they object with sufficient clarity, or else that issue is forfeited. *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).

7

As to any unobjected portions of an R&R, the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error … in order to accept the recommendation." *See Redmon v. Noel*, No. 1:21-CV-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (citing cases).

So the first issue the Court must consider is whether Price has properly objected. On that front, the Court begins by observing that neither of Price's Objections was timely. *See Muhammad v. Close*, 798 F. Supp. 2d 869, 875 (E.D. Mich. 2011) (noting that district courts have discretion as to whether "to consider evidence first presented after a magistrate judge files a report, provided the evidence is furnished by the time objections to the report and recommendation are due"). The Magistrate Judge ordered any objections to be filed by January 11, 2021, fourteen days after the December 28 R&R. Price did not first object until January 15. And he objected again on September 12, 2022, almost two years later.

Price's potentially-late objections place the Court under the umbrella of Federal Rule of Civil Procedure 72(b)(3), which directs:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3). Given the amount of prisoner mail that the Court receives, the Court is not surprised when an inmate's filing arrives a couple of days late. Indeed, that happens enough that the Court surmises such a delay could occur at no

8

fault of the inmate. Because of this, the Court is willing to consider Price's first Objections as if they were timely.

Price's second set of Objections, however, is a different story. The Court recently highlighted that the Sixth Circuit has yet to establish formal constraints on Rule 72(b)(3). *Johnston v. Hamilton Cnty. Just. Ctr.*, No. 1:18-cv-864, 2022 WL 4554117, at *4 (S.D. Ohio Sept. 28, 2022). But "those constraints must exist in some form." *Id.* After all, allowing routine consideration of late-filed evidence or arguments would encourage a party to "save its knockout punch for the second round," *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988). That result would frustrate judicial efficiency. So the Court declines to consider Price's second Objections. Twenty months late is on the wrong side of whatever the line might be.

The December 28 R&R recommends that the Court grant the Defendants' Motion for Summary Judgment and dismiss the rest of Price's complaint. (Doc. 28, #468). In doing so, that R&R views Price's remaining failure-to-protect claim through two separate lenses: pre-June 22, 2018, and post. (*Id.* at #460).

Price's first Objections do not distinguish between those timeframes, but Price lodges only one objection involving post-June 22 conduct: his belief that the Defendants sent him to "the same dorm around Morrissette and members of their gang" after the attack. (Doc. 29, #472). This likely constitutes a general objection. *See Howard*, 932 F.2d at 509. But since the Court construes pro se filings liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the Court will assume for purposes of

9

comprehensive analysis that Price's objection relating to post-June 22 conduct meets the threshold for fresh review.

Start with the procedural standard. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party presents evidence to meet its burden, the nonmoving party must come forward with significant evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party cannot make the necessary showing for an element on which it bears the burden of proof, then the moving party is entitled to summary judgment. *Id.* at 323. The Court views all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Turning to substance, the Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const. amend. VIII. Such a guarantee requires prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). A prison official, however, only violates an inmate's rights if they act with "deliberate indifference to inmate health or safety." *Id.* at 834 (cleaned up).

Eighth Amendment failure-to-protect claims have both an objective and subjective component. *Richmond v. Huq*, 885 F.3d 928, 937–38 (6th Cir. 2018). The objective part requires the inmate to show incarceration "under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The subjective part

10

requires the inmate to show "that the individual defendants (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) actually drew the inference; and (3) consciously disregarded the risk." *Westmoreland v. Butler County*, 29 F.4th 721, 726 (6th Cir. 2022) (cleaned up).

Putting the procedural and the substantive together, the Court reviews de novo the Magistrate Judge's recommendation that the Court grant Defendants' Motion for Summary Judgment. And that review will consider whether, viewing the evidence in the light most favorable to Price, a genuine issue of material fact exists as to whether Price has met both the objective and subjective elements of a failure-to-protect claim based on the events (1) before or (2) after June 22, 2018. The Court considers each in turn.

**A.    Pre-June 22**

Price's first failure-to-protect claim grounds in his belief that the Defendants failed to protect him from being attacked on June 22. The December 28 R&R recommends granting summary judgment to the Defendants because of Price's "failure to prove that any of [Defendants] were subjectively aware of but disregarded a substantial risk to [Price's] safety prior to June 22, 2018." (Doc. 28, #464). Price disagrees, objecting that the "Defendants all were aware that [Price] informed them on and off record of his fear of Morrissette," yet forced him to bunk with Morrissette again. (Doc. 29, #471). This claim fails. Price cannot satisfy either the objective element or the subjective one.

11

### 1. Objective Element

First, Price has not shown that he suffered from "a substantial risk of serious harm." *See Farmer*, 511 U.S. at 834. Recall that Price claimed ownership of the drugs found in his cell on June 8. And recall that the incident with Morrissette occurred right after Price returned to that cell on June 22. Price admits he had no contact with Morrissette or his affiliates between those dates. And he does not allege that anyone threatened him during that time. The substantial risk of serious harm required by *Farmer*, then, must come from June 8, as Price has alleged no threat to his safety from his time in limited privilege housing.

The conduct report from June 8 mentions nothing about Morrissette or anyone else being a threat to Price's safety. And in the Court's view, this makes sense. Price did what he claims Morrissette asked of him, with no challenge or complaint. The Court shares the government's skepticism that Morrissette would be "hostile toward him if [Price] truly took ownership of drugs that were not his." (MSJ, Doc. 17, #124). It beggars belief that Morrissette sat in his cell for two weeks lying in wait to attack Price—for doing what Price now alleges Morrissette forced him to do.

The R&R notes that Price "fail[ed] to convey any specific threat beyond the June 8 'if-you-don't confess' conditional threat." (Doc. 28, #463). The Court agrees. Price has not shown any factual dispute as to whether he suffered from a threat sufficient to create a substantial risk of serious harm. And he admits in his affidavit that he has "no documents in his possession to support [his] claims." (Doc. 23, #432). Nothing in the record from June 8 shows that Price faced a substantial risk of harm

12

before or after the incident with Morrisette. Put together, Price cannot satisfy the objective component of a pre-June 22 claim.

### 2. Subjective Element

Second, Price has not shown that prison officers disregarded any risk of serious harm to him. Indeed, Price has shown no facts that would allow officers to infer such a risk either. *Cf. Westmoreland*, 29 F.4th at 726.

Price's complaint generally asserts that he told Cooper his concerns about being sent back to his original cell block. (Doc. 3, #46). But Cooper's affidavit refutes this: "At no point whatsoever did Price ever voice to me any problems, issues, or concerns" about Morrissette. (Doc. 17-15, #327). And when pressed on this point, Price seems to concede. Rather than substantiate his claim, he explains his silence: he "had not voiced" his concerns because of a fear he would get "beat up" by jail staff if he refused an order. (MSJ Resp., Doc. 23, #429).

Price has not shown that officers "were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Cf. Westmoreland*, 29 F.4th at 726. Without Price demonstrating the alleged risk to his safety, the Court cannot say that prison staff should have known or inferred it, let alone disregarded it. At that time, on the facts provided by Price to the officers, Morrissette told Price to claim the drugs, and he did. It is true that Price's story has changed many times between the incident and now, including in his filings before this Court. But at bottom, Price has "not adduced any competent summary judgment evidence containing some further factual enhancement" of the alleged threats. *Reedy v. West*,

13

988 F.3d 907, 913 (6th Cir. 2021). So Price cannot make the requisite showing for a pre-June 22 claim.

**B.    Post-June 22**

Price's second failure-to-protect claim grounds in his belief that Defendants failed to protect him after June 22. Price complains that other inmates, whom he believed to be gang-related associates of Morrissette, threatened him. The December 28 R&R recommends rejecting this claim as well. (Doc. 28, #467). In the Magistrate Judge's view, Price has offered little-to-no evidence to support this claim either. (*Id.*). Price again disagrees, stating that his fears were repeatedly ignored and that "[t]he Defendants did nothing to protect" him. (Doc. 29, #473).

   **1.    Objective Element**

For Price's post-June 22 claim to survive, he would again need to show "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. He has not. Instead, he alleges only vague, unspecific verbal threats from Morrisette's unidentified affiliates. *See Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001) (finding "a general concern" that did not identify "any particular gang members whom [the inmate] feared" insufficient to support an Eighth Amendment claim even when the inmate was eventually attacked). Price never shared a cell with Morrissette after June 22. And he did not raise the concerns of these new threats until during the disciplinary proceedings and grievance processes following the June 8 incident. As the December 28 R&R notes, the Protective Control Committee reviewed Price's complaints more than once and found "no facts to support a credible threat to justify placement"

14

elsewhere. (Doc. 28, #467). Without any facts to support Price's claim that he faced substantial harm, that claim must fail.

### 2. Subjective Element

To satisfy his burden as to the subjective element, Price must have shown that each of the Defendants knew of a substantial risk of harm to him *and disregarded it*. *Farmer*, 511 U.S. at 844. On the record, the Defendants did precisely the opposite of disregarding any risk to Price. Recall that the Protective Control Committee conducted two separate investigations. And that neither of those investigations found any credible threat to Price's safety. This makes sense—Price has alleged no harm because of the threats mentioned above.

Coupling these events with Price's transfer to another institution, the Court cannot say that Defendants disregarded any substantial risk of harm to Price. *See Farmer*, 511 U.S. at 844 (noting that reasonably responding officers "may be found free from liability"). In fact, the prison acted appropriately in response to Price's concerns. So his post-June 22 claim fails as well.

## CONCLUSION

For these reasons, the Court **OVERRULES** Price's Objections (Docs. 29 & 36) and **ADOPTS** the December 28 R&R (Doc. 28). The Court accordingly **GRANTS** Defendants' Motion for Summary Judgment (Doc. 17) and **DISMISSES** Price's Complaint (Doc. 3) **WITH PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

**SO ORDERED.**

January 3, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**